JL

WO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

John Anthony Cole,

Plaintiff,

v.

F. Ortega, et al.,

Defendants.

No.    CV-26-00973-PHX-JAT (ASB)

**ORDER**

Plaintiff John Anthony Cole, who is confined in the Arizona State Prison Complex-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1), an Application to Proceed In Forma Pauperis (Doc. 2), a Motion for Injunctive Relief and Protective Order (Doc. 6), a Motion for Preservation of Evidence and/or Motion for Leave to Conduct Limited Early Discovery (Doc. 7), and a Motion for Injunctive Relief and Temporary Restraining Order (Doc. 8). The Court will grant the Application to Proceed; deny the Motions without prejudice; order Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, Diaz, Benmen, Fulks, and Levine to answer portions of the Complaint; and dismiss the remaining claims and Defendants without prejudice.

**I.    Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $35.49. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income

TERMPSREF

credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

TERMPSREF

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III.    Complaint

In his 12-count Complaint, Plaintiff sues NaphCare and Health Administrator Lauren Fulks; Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) Director Ryan Thornell; Associate Deputy Warden Rogers; Sergeant Benmen; Correctional Officers (COs) II F. Ortega, Simmons, Chris Sanchez, Diaz, Meyers, Rheem, Bachman, McCormick, and Levine; and John Does 1-10. (Doc. 1 at 1-2.) Plaintiff names each Defendant in his or her individual and official capacities and brings claims of excessive force, denial of constitutionally adequate medical care, retaliation, denial of equal protection, and civil conspiracy. (*Id.* at 5-17, 20.) Plaintiff also brings state-law claims of assault, battery, intentional infliction of emotional distress, medical negligence, and conversion. (*Id.* at 18-19.) He seeks declaratory and monetary relief. (*Id.* at 21.)

In **Count One**, Plaintiff alleges that on February 22, 2025, Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, and three John Doe COs II physically assaulted him while he was handcuffed behind his back and restrained with leg shackles. (*Id.* at 5.) Plaintiff claims Defendant Ortega and one of the John Doe COs II "initiated the initial assault" by slamming Plaintiff's face into a concrete wall "and then repetitively on the concrete floor." (*Id.* at 6.) Plaintiff asserts that Defendants Sanchez and Simmons simultaneously kicked and stomped on Plaintiff with their boots while he was face down on the floor. (*Id.*) Plaintiff further alleges he was "compliant with all lawful commands," non[-]threatening, [and] non-combative" and that he remained composed and non-resistant while he lay "limp in a vulnerable defenseless position." (*Id.*) Plaintiff alleges that Defendant John Doe #1 used his knee to kneel on Plaintiff's neck; John Doe #2 used his body weight and boot to stand on Plaintiff's elbow; John Doe #3 used his body weight to "suffocate/smo[]ther" Plaintiff; John Doe #4 twisted Plaintiff's left pinky finger, causing it to break; John Doe #5 "violently applied pressure" to Plaintiff's left thumb "in

an awkward position of opposite range of motion," causing torn ligaments and tendons; and John Doe #6 punched Plaintiff in the head.  (*Id.*)

According to Plaintiff, Defendant Simmons stated, "Tell the other n*****s that we got the ringleader writing the grievances and [Prison Rape Elimination Act (PREA)] reports"; Defendant Ortega stated, "See if the n****r's got on a chain" and "Take the n****r's new shoes"; and Defendant Bachman said, "Let me get a lick on the n****r." (*Id.*)  Plaintiff also claims Defendant Benmen told Defendant Fulks that Plaintiff was "good," and no treatment was needed.  (*Id.*)

Plaintiff alleges that all Defendants "collectively played a role in the unprovoked assault . . . whether limited or exclusively active," and each Defendant "simultaneously aided, assisted, conspired, facilit[ated], or failed to intervene." (*Id.* at 5.)  As his injury, Plaintiff claims he suffered a concussion, headaches, migraines, a broken left pinky finger, broken right ribs, torn ligaments and tendons in his left thumb, body aches, pain, bruising, nerve damage, difficulty sleeping and breathing, post-traumatic stress disorder (PTSD), anxiety, panic attacks, and mental and emotional distress. (*Id.*)

In **Count Two**, Plaintiff alleges that on February 28, 2025, Defendants Diaz, Simmons, Ortega, Meyers, Sanchez, Rheem, McCormick, and three John Doe COs II physically assaulted him.  (*Id.* at 7.)  Plaintiff claims Defendants Diaz and Simmons "initiated the unprovoke[d] attack" on Plaintiff, while he was bound and restrained with handcuffs and leg shackles, by "aggressively and forcefully" pushing him face first into a concrete wall.  (*Id.*)  Plaintiff asserts that Diaz "open-hand slapped Plaintiff's right eye" and "used a closed fist strike as an offensive weapon to punch Plaintiff in his left eye." Plaintiff further alleges that Defendants Simmons and Ortega "forcefully slammed [his] body onto the concrete floor and repeated the action." (*Id.*)  According to Plaintiff, Defendant John Doe #1 "used a barrage of close[d] fist strikes as offensive weapons to [hit] Plaintiff's head and body"; John Doe #2 used steel-toed boots to repeatedly kick Plaintiff in the ribcage while he lay motionless on the floor; John Doe #3 used steel-toed boots to kick Plaintiff's body while he lay on the ground; John Doe #4 twisted Plaintiff's left pinky

finger until it broke[1]; and John Doe #5 violently applied pressure to Plaintiff's left thumb in an "awkward of opposite range of motion" causing ligaments and tendons to be torn. (*Id.*)

Plaintiff asserts that he remained "compliant, composed, non[-]combative, non[-]resistant, defenseless, and limp on his stomach" as Defendant Diaz stated, "Let's give the n****r a wedgie." (*Id.* at 8.)  Plaintiff also alleges that Diaz used his body weight to suffocate Plaintiff, placed his hand between Plaintiff's boxer shorts and bare buttocks, and "violently snatched the waistband of Plaintiff's boxer shorts from the top of his hips/waist to the middle of Plaintiff's back below his lower shoulder blades[,] causing discomfort and bleeding from the anus/rectal skin being scrap[]ed, chaf[]ed, and torn." (*Id.*)  Plaintiff claims Defendant Simmons stated, "Yeah since he likes to file PREA[]s, this is not sexual assault, it's payback bxxch." (*Id.*)  Plaintiff asserts that Defendant Ortega kicked Plaintiff in his right ribs, and Simmons told Ortega, "Break the other ribs, stay away from the right side." (*Id.*)  Plaintiff alleges that John Doe #5 reapplied Plaintiff's handcuffs to cut into his wrist and prevent circulation, causing numbness, pain, and nerve damage. (*Id.*)  Plaintiff further claims John Doe #4 "inappropriately applied" his leg shackles "in the same manner described above." (*Id.*)  Plaintiff contends Defendant Levine "witnessed this assault and refused to intervene." (*Id.*)

Plaintiff asserts that Defendant Fulks was "cuddled up with" Defendant Benmen when Plaintiff was escorted to the infirmary, where Plaintiff alleges that Benmen "made the statement, 'no evidence,' implying the refusal of medical emergency triage." (*Id.*)  Plaintiff alleges he was "refused medical." (*Id.*)

Plaintiff alleges that each Defendant "collectively played a role in the unprovoked violent assault" against him, "[w]hether limited or excessively aggressive," and each Defendant "actively aided, assisted, conspired, facilitated, or failed to intervene." (*Id.* at 7.)  As his injury, Plaintiff alleges he suffered head trauma, a concussion, headache, migraine, body aches, pain, bruising, soreness, broken left ribs, a broken left pinky finger,

---

[1] Plaintiff alleges his left pinky finger was broken in the February 22, 2025 incident.

torn ligaments and tendons in his left thumb, difficulty breathing and sleeping, nerve damage, numbness, hemorrhoids, anal/rectal tear, chafing, scrapes, PTSD, anxiety, panic attacks, and mental and emotional distress. (*Id.*)

In **Count Three**, Plaintiff claims Defendant Diaz sexually assaulted him on February 28, 2025, when Diaz placed his hand between Plaintiff's boxer shorts and bare buttocks and "forcefully and violently snatched the waistband of Plaintiff's boxer shorts from the top of his hips/waist to the middle of Plaintiff's back below his lower shoulder blades[.]" (*Id.* at 9.) Plaintiff alleges that Diaz "perpetuated this act of inappropriate sexual contact while Plaintiff was face down on his stomach on the concrete ground" and restrained by handcuffs, leg restraints, and the weight of multiple COs "in the form of feet, knees, and forced hand pressure." (*Id.*) Plaintiff asserts that no other Defendant named in Count Two "intervened during the sexual assault." (*Id.*)

In **Count Four**, Plaintiff alleges Defendants NaphCare, Fulks, Simmons, Ortega, Sanchez, Meyers, Rheem, Benmen, Bachman, McCormick, and three John Doe COs II denied him medical care, treatment, triage, examination, diagnosis, and aftercare. (*Id.* at 10.) Plaintiff asserts that Defendant Fulks intentionally denied him medical treatment, although it was "obvious" that Plaintiff had visible injuries consistent with a physical altercation. (*Id.*) Plaintiff claims he "conveyed to Fulks his need for medical attention," and when she asked how he sustained his injuries, Plaintiff told Fulks that the "ADCRR CO[]s had caused the injuries." (*Id.*) Plaintiff alleges that Defendant Benmen told Fulks, "He's good, no treatment needed." (*Id.*) Plaintiff also claims the Defendants who allegedly assaulted him, as described in Counts One and Two, should have known that his injuries necessitated emergency medical treatment, and their "negligence" violated his Eighth Amendment rights. (*Id.*)

In **Count Five**, Plaintiff repeats the allegation that during the February 22, 2025 incident, Defendant Simmons stated, "Tell the other n*****s that we got the ringleader writing the grievances and PREA reports." (*Id.* at 11.) Plaintiff asserts that he "took this comment to [mean] that the sole reason, logic, and justification for the unprovoked assault

was Plaintiff's utilization of the administrative remedy process to report ADCRR employee misconduct." (*Id.*) According to Plaintiff, this "direct admission by Defendant Simmons provides motive for the assault" and violates Plaintiff's First Amendment rights. (*Id.*)

Plaintiff further claims that Defendants NaphCare and Fulks retaliated against Plaintiff by refusing him emergency medical treatment/triage because Plaintiff "made allegations to NaphCare that the injuries sustained were the result of ADCRR staff misconduct." (*Id.*)

In **Count Six**, Plaintiff alleges that he was denied equal protection during the incidents on February 22 and 28, 2025. (*Id.* at 12.) Plaintiff claims that Defendants "used racial animus in the form de[]ogatory speech designed to inflame, create hostility, terror, intimidation, fear, and racial inferiority/superiority." (*Id.*) Plaintiff contends "[t]his form of racial animus in the commission of a violent crime violates [his] civil rights as a federal hate crime being perpetrated against a minority victim" because he is African-American, and none of the Defendants are African-American. (*Id.*)

In **Count Seven**, Plaintiff alleges that Defendants engaged in a civil conspiracy. (*Id.* at 13.) Plaintiff asserts that on January 27, 2025, he submitted a PREA complaint against a non-party CO. (*Id.*) Plaintiff claims the February 22, 2025 incident was a "preplanned strategic attack calculated by" Defendants' "conspiracy to retaliate against Plaintiff" for submitting the grievance and PREA report. (*Id.* at 14.)

Plaintiff alleges that on February 21, 2025, Defendants "conspired to violently attack, assault, kill, maim, hurt and injure" Plaintiff and gave "advanced forewarning notice" about the incident that transpired the next day. (*Id.* at 13, 14.) Plaintiff claims Defendant Ortega "taunted Plaintiff with chants of 'Cell-9, Cole, go to rec.'" (*Id.* at 13.) Plaintiff asserts Defendant Simmons stated, "Cole we got something for you . . . Don't bxxch out . . . Go to rec." (*Id.*) Plaintiff alleges that Defendant Simmons threatened him on four separate occasions on February 21, stating, "We will kill you and nobody will care," and "We're going to smash you when you go to rec." (*Id.*) Plaintiff claims he

TERMPSREF

"documented these encounters" through the ADCRR injunction portal and the inmate emergency hotline. (*Id.*)

Plaintiff asserts that on the morning of February 22, 2026, Defendant Bachman came to Plaintiff's cell and stated, "See you there n****r, don't bxxch up!" (*Id.* at 14.) According to Plaintiff, this was "in reference to going to outdoor recreation to expect to be in a physical altercation." (*Id.*) Plaintiff claims that after the "physical assault" began on February 22, Defendant Simmons yelled, "Sarge, call Rogers tell him it's done." (*Id.*) Plaintiff alleges that Defendant Rogers "obviously was awar[e] of the preplanned strategic assault on Plaintiff," as "confirmed" by Simmons's statement. (*Id.*)

In **Count Eight**, Plaintiff alleges that after the February 28, 2025 incident, Defendants NaphCare, Fulks, Diaz, Benmen, Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, and three John Doe COs II showed deliberate indifference to Plaintiff's serious medical needs. (*Id.* at 15.) Plaintiff claims that when he was taken to the medical unit, Defendant Benmen was physically "cuddled up" with Defendant Fulks, and Benmen told Fulks, "no evidence" while shaking his head "no," to "suggest no medical services." (*Id.*) Plaintiff asserts Defendant Fulks refused Plaintiff medical services and told a medical provider that she could not take photos of Plaintiff's injuries. (*Id.*) Plaintiff alleges the ADCRR COs "each used intimidation tactics to influence NaphCare medical to refuse Plaintiff medical services by surrounding Plaintiff and blocking access, walkway, pathway for medical personnel to effectively assess Plaintiff's injuries." (*Id.*)

In **Count Nine**, Plaintiff repeats his allegation that during the February 28, 2025 incident, Defendant Simmons stated, "Yeah since he likes to file PREA[]s, this is not sexual assault, it's payback bxxch." (*Id.* at 16.) Plaintiff claims the assault on February 28 was "motivated by" his use of the administrative remedy process and available PREA reporting methods and that Defendant Ortega said Plaintiff had "lawyered up" with respect to the February 22, 2025 incident. (*Id.*) Plaintiff further alleges that Defendants NaphCare and Fulks retaliated against him by refusing him medical services for reporting ADCRR employee misconduct. (*Id.*)

In **Count Ten**, Plaintiff alleges that Defendant Levine knowingly and willingly failed to intervene and prevent the assault against Plaintiff on February 28, 2025. (*Id.* at 17.)

In **Count Eleven**, Plaintiff asserts that Defendants committed the crimes of aggravated assault, sexual assault, and unlawful sexual conduct. (*Id.* at 18.) Plaintiff also asserts claims of conversion, medical negligence, and intentional infliction of emotional distress. (*Id.* at 19.)

In **Count Twelve**, Plaintiff alleges that Defendant Rogers "used his position to establish unwritten policies, practices, customs, and a culture of retaliation, systemic targeting, threatening, intimidation, and physical brutality." (*Id.* at 20.) Plaintiff asserts that Rogers "fostered a culture of hostility with ag[g]ressive hands[-]on tactics utilizing ADCRR CO[]s" to "execute his agenda of breaking inmates." (*Id.*) Plaintiff claims he was "targeted" by Defendant Rogers on multiple occasions with "documented" daily harassment, sexual harassment, "physical/sexual assaultive violence," and denial of medical care. (*Id.*) Plaintiff contends Rogers was aware of these practices and had "advance[] knowledge" of the February 22, 2025 incident. (*Id.*)

## IV. Discussion of Complaint

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A. NaphCare

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support

that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139; *Buckner*, 116 F.3d at 452.

Plaintiff does not allege that any of the conduct described in the Complaint was the result of a specific policy or custom of Defendant NaphCare. Thus, the Court will dismiss without prejudice Defendant NaphCare.

### B. Official versus Individual Capacity

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Although Plaintiff has named Defendants in both their individual and official capacities, Plaintiff's allegations fail to plausibly show that any policy, practice, or custom of any entity has resulted in his alleged injuries. Accordingly, the Court will construe Plaintiff's claims as directed against the Defendants in their *individual* capacities only and will evaluate them accordingly.

. . . .

## C.    Supervisory Liability

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell*, 436 U.S. 658; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged that Defendant Thornell personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Rather, Plaintiff names Thornell solely based on Thornell's role as ADCRR Director. Thus, the Court will dismiss Defendant Thornell.

With respect to Defendant Rogers, Plaintiff claims Rogers "targeted" Plaintiff with "documented" daily harassment, sexual harassment, "physical/sexual assaultive violence," and denial of medical care. Such vague and conclusory allegations are not sufficient to show that Rogers was personally involved in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. The Court will therefore dismiss Defendant Rogers.

## D.    Excessive Force

When an inmate claims that prison officials violated his Eighth Amendment rights by using excessive physical force, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, the Supreme Court has made it clear that not every use of physical force violates the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028, 1033 (2nd Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

*Id.* at 9.

Liberally construed, Plaintiff has stated an excessive force claim in Count One against Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, and McCormick, and John Does 1-6 and in Count Two against Defendants Diaz, Simmons, Ortega, Meyers, Sanchez, Rheem, McCormick, and John Does 1-5. The Court will require Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, and McCormick to answer Count One and order Defendants Diaz, Simmons, Ortega, Meyers, Sanchez, Rheem, and McCormick to answer Count Two.

Although Plaintiff has stated a claim against Defendants John Does 1-6, the Court will not require service on the Doe Defendants at this time because it is, in most instances, impossible for the United States Marshal or his designee to serve a summons and complaint upon an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). The Court will allow Plaintiff 120 days in which to discover the actual name of Defendants John Does 1-6, through subpoena or otherwise, and to substitute the Defendant's actual name by filing a "notice of substitution." *See Wakefield*, 177 F.3d at 1163. The Court may dismiss these Defendants without prejudice if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

### E. Failure to Intervene

In Count Ten, Plaintiff alleges that Defendant Levine witnessed the February 28, 2025 incident but failed to intervene. An officer's failure to intervene in unconstitutional conduct can support a claim where the officer has a realistic opportunity to intervene but fails to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); see also Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003). Such a claim is dependent on the

existence of an underlying claim against the officers who directly violated a plaintiff's constitutional rights. *See*, e.g., *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 752 n.21 (E.D. Cal. 2022); *Valadez v. County of Los Angeles*, No. 2:20-CV-03724-JWH-SKX, 2024 WL 3153207, at *16 (C.D. Cal. June 24, 2024).

Liberally construed, Plaintiff has stated a claim in Count Ten against Defendant Levine. The Court will require Defendant Levine to answer Count Ten.

### F.    Sexual Assault

Physical sexual assault on a prisoner by a prison official violates the Eighth Amendment, *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), and "prisoners have a right to be free from sexual abuse," *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). To state a claim, Plaintiff must allege that "a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020); *see also Wood v. Beauclair*, 692 F.3d 1041, 1050 (9th Cir. 2012) (sexually touching and harassing prisoner during a strip search "in a manner designed to demean and humiliate" can state an Eighth Amendment claim); *Hill v. Rowley*, 658 F. App'x 840, 841 (9th Cir. 2016) (prison officer's "gripping" a prisoner's buttocks "intentionally to discriminate against him" stated claim for sexual harassment under the Eighth Amendment).

Plaintiff fails to state a claim for sexual assault against Defendant Diaz. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9 (citation omitted); *see*, *e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (finding no Eighth Amendment violation where officer allegedly rubbed his thigh against plaintiff's thigh while plaintiff was on toilet and began smiling before leaving cell laughing). Plaintiff's allegation that Defendant Diaz gave him a "wedgie" fails to state a claim under

§ 1983 because it is "the sort of trivial use of force that falls below constitutional recognition." *Morman v. Dyer*, No. 16-cv-01523-SI, 2016 WL 5358592, at 3 (N.D. Cal. Sept. 26, 2016); *see also Walker v. Beshara*, No. 1:20-cv-01050-JLT-HBK (PC), 2023 WL 8654745, at *6 (E.D. Cal. Apr. 4, 2023) (allegation that officer grabbed plaintiff's pants from the back and "forcefully yank[ed] the pants up into [the plaintiff's] private area and buttocks[,] causing excruciating pain," did not state an Eighth Amendment excessive force claim); *Cooper v. Woodford*, No. 1:07-cv-00214-AWI-GSA PC, 2008 WL 1734557, at *3, (E.D. Cal. Apr. 11, 2008) ("Plaintiff's allegations that Defendant Morales slammed him into the wall and gave him a wedgie in an effort to provoke him fall short of supporting a claim that Defendant inflicted upon him physical force which rose to the level of sadistic and malicious."). The Court will therefore dismiss Count Three.

### G.    Medical Care

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison

doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

As noted, deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Liberally construed, Plaintiff has stated Eighth Amendment claims against Defendants Benmen and Fulks in Counts Four and Eight. The Court will require Defendants Benmen and Fulks to answer Counts Four and Eight.

Plaintiff does not state medical care claims against the Defendants who allegedly assaulted him on February 22 and 28, 2025. Plaintiff does not allege that Defendants Diaz, Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, or the John Doe COs II delayed Plaintiff's transport to the medical unit or otherwise prevented Plaintiff from obtaining medical treatment.

### H.    Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408

TERMPSREF

F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").   The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

### 1.    Count Five

Liberally construed, Plaintiff states a retaliation claim in Count Five against Defendant Simmons.  The Court will require Defendant Simmons to answer Count Five.

Plaintiff's allegations in Count Five do not state a retaliation claim against the remaining Defendants.  Plaintiff does not allege that on February 22, 2025, Defendants Benmen, Fulks, Diaz, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, or the John Doe COs II were aware that Plaintiff had submitted a grievance and PREA report against the CO.

### 2.    Count Nine

Liberally construed, Plaintiff states a retaliation claim in Count Nine against Defendants Simmons and Ortega.  The Court will require Defendants Simmons and Ortega to answer Count Nine.

Plaintiff's allegations in Count Nine do not state a retaliation claim against the remaining Defendants.  Plaintiff does not allege that on February 28, 2025, Defendants Benmen, Fulks, Diaz, Sanchez, Meyers, Rheem, Bachman, McCormick, or the John Doe COs II were aware that Plaintiff had submitted a grievance and PREA report against the CO or that he had contacted a lawyer regarding the February 22, 2025 incident.

### I.    Equal Protection

"To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and

that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005) (internal quotations omitted).  Plaintiff alleges he is African-American, and during the February 22 and 28, 2025 incidents, Defendants Simmons, Ortega, Bachman, and Diaz used racial slurs, suggesting their conduct was motivated by racial bias.

Liberally construed, Plaintiff has stated an equal protection claim in Count Six against Defendants Simmons, Ortega, Bachman, and Diaz.   The Court will require Defendants Simmons, Ortega, Bachman, and Diaz to answer Count Six.

Plaintiff fails to state an equal protection claim against the remaining Defendants who were involved in the February 22 and 28, 2025 incidents.  Plaintiff alleges no facts to support that the other Defendants made any racially charged statements or exhibited any other racial animus toward Plaintiff.

**J.    Civil Conspiracy**

In Count Seven, Plaintiff purports to assert a claim for civil conspiracy under § 1983. To state a conspiracy claim under § 1983, a plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing plaintiff harm and took some concerted action in furtherance thereof.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege facts showing an agreement among the alleged conspirators to deprive him of his rights); *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege at least facts from which such an agreement to deprive him of rights may be inferred).   The Court "need not, however, accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim); *Karim-*

*Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").

Plaintiff's allegations do not state a claim for civil conspiracy. Plaintiff alleges no *facts* to support that any Defendants made an agreement to deprive him of his rights. The Court will therefore dismiss Count Seven.

### K.    State-Law Claims

As noted, in Count Eleven, Plaintiff purports to assert claims for the crimes of aggravated assault, sexual assault, and sexual misconduct against Defendants. Neither Plaintiff nor this Court may initiate criminal charges against any person.

Plaintiff also asserts claims for intentional infliction of emotional distress, medical negligence, and conversion against Defendants NaphCare, Thornell, Simmons, Diaz, Ortega, Sanchez, Meyers, Rheem, Benmen, Bachman, and Fulks. Plaintiff may not assert more than one claim per count, but in Count Eleven, he has asserted five claims against nine Defendants. Plaintiff's vague and conclusory allegations in Count Eleven are insufficient to state a claim. The Court will therefore dismiss Count Eleven.

### V.    Plaintiff's Motions

#### A.    Injunctive Relief

##### 1.    Plaintiff's Allegations

In his first Motion for Injunctive Relief, Plaintiff seeks a "temporary and/or permanent injunction or order of protection" against ADCRR "employees and policies that have systematically targeted [him]." (Doc. 6.) Plaintiff alleges the following:

On February 12, 2026—two days after he filed the Complaint in this case—Defendant Diaz and three other ADCCR officers who are not named in the Complaint arrived at Plaintiff's cell to escort him to recreation, although Plaintiff had not signed up for recreation. (Doc. 6 at 2.) The officers "stated that they knew of the pending litigation that had been submitted." (*Id.*) Shortly thereafter, Plaintiff called the institutional medical emergency line to make a mental health emergency request based on post-traumatic stress disorder, anxiety, and panic attacks induced by the "harassment [and] intimidation tactics

deployed by Defendant Diaz[]" and other officers who had knowledge of the Complaint. (*Id.* at 2-3.)

Later that day, a sergeant returned to Plaintiff's cell with Defendant Diaz and three other COs. (*Id.* at 3.)  The officers tried to "coerce" Plaintiff out of his cell for a shower. (*Id.*)  At the time, Plaintiff had not been out of his cell since January 19, 2026; had not had a shower since January 4, 2026; and had not had recreation since October 18 or 19, 2025. (*Id.*)  Plaintiff "was questioned" and harassed about this case "mere hours" after it was filed. (*Id.*)  The sergeant threw Plaintiff's medical prescription on the floor, and the officers left. (*Id.*)  The same day, the second shift "refused to issue the last meal," per the sergeant. (*Id.*)

On February 13, 2026, Plaintiff was denied three consecutive meals. (*Id.*)  The next day, Plaintiff again was denied three consecutive meals. (*Id.* at 3-4.)  He also refused outside recreation, a shower, and scheduled x-rays because he feared for his life, health, safety, and security. (*Id.* at 4.)  On one of those dates, the sergeant opened Plaintiff's food slot but "refused to feed" Plaintiff and instead "stole Plaintiff's weekly toilet paper allotment." (*Id.*)

Between February 15 and 18, 2026, the "back end" shift rotation for Browning Unit started and ended. (*Id.*)  Plaintiff received all his meals with no issues. (*Id.*)  No officer on the "back end" shift is listed as a Defendant in this case. (*Id.*)  On February 18, 2026, Defendant Ortega "made an inappropriate gesture to mimic blowing a kiss and winking his eye which is deemed to be sexual harassment" under ADCRR Department Order 501. (*Id.*)  While Defendant Ortega had his back to the surveillance camera, Plaintiff submitted a PREA complaint and a complaint to the inmate emergency PREA institutional hotline. (*Id.*)  Plaintiff also made a call to the institutional emergency medical/mental health call center seeking mental health treatment for PTSD, anxiety, and a panic attack "induced by" Defendant Ortega. (*Id.* at 4-5.)  Plaintiff submitted a message/complaint to the inmate ombudsman and a complaint to the ADCRR injunction portal. (*Id.* at 5.)  Plaintiff also spoke with the Court Monitor "concerning issues listed in this statement of facts." (*Id.*)

TERMPSREF

On the evening of February 18, 2026, a sergeant refused to issue Plaintiff's evening meal with no justification. (*Id.*) The next morning, officers refused to issue Plaintiff's morning meal with no justification. (*Id.*) Plaintiff made complaints to the inmate ombudsman, the institutional medical/mental health emergency hotline, and the injunction portal. (*Id.*) Officers refused to issue Plaintiff's noon meal that day, without justification. (*Id.*)

In his second Motion for Injunctive Relief, Plaintiff "seek[s] relief in the form of an injunction to keep" Defendants Ortega and Diaz "away from him" and an immediate transfer to any other facility of the Browning Unit if Defendants "are unable to comply with a court injunction." (Doc. 8 at 14.) Plaintiff alleges the following:

On March 18, 2026, Plaintiff received an ADCRR Institutional Disciplinary Report, which Defendant Rheem had issued on March 13, 2026. (*Id.* at 2.) According to Plaintiff, the report is "fraudulent" and is "a form of retaliation designed to place [his] life, health, safety, security and well[-]being in jeopardy by labeling him as a sex offender or a sexually devi[a]nt predator in prison." (*Id.*)

Plaintiff alleges that he is being "systematically targeted" by the Defendants he has named in his cases in this Court, who "use physical intimidation tactics designed to create a hostile environment by instilling fear into [him]." (*Id.* at 13.) Plaintiff asserts that Defendants' behavior "serves no legitimate penological interest and creates an unsafe, unhealthy atmosphere" for him. (*Id.*) Plaintiff states that he "reserves the right to protect and defend himself against any perceived threat upon his life, persons, or property by using any and all force necessary including legal in an offensive or defensive manner to preserve his life."[2]

---

[2] The Court construes this statement as a threat to ADCRR officers. The Court will not tolerate threats of violence, and any further threats may result in dismissal of this case. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process"); *Ewing v. Freedom Forever, LLC*, No.: 23-CV-1240 JLS (AHG), 2024 WL 4668144, at *3 (S.D. Cal. Nov. 4, 2024) ("Terminating sanctions are more than justified in situations of repeated threats of violence.").

### 2. Discussion

Whether to grant or deny a motion for a temporary restraining order or preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

#### a. Temporary Restraining Order

A temporary restraining order can be issued without notice

> only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; **and** (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis added). *See also* LRCiv 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

Plaintiff has not shown that he will suffer irreparable injury before Defendants can be heard in opposition and has not certified the "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Because the request for a temporary restraining order fails to comply with Rule 65(b)(1)(B), the Court, in its discretion, will deny Plaintiff's request for a temporary restraining order without prejudice. *See* LRCiv 65.1.

#### b. Motion for Preliminary Injunction

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Plaintiff has not shown that he is likely to suffer irreparable harm in the absence of an injunction. *See Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (explaining that "[s]peculative injury does not constitute irreparable injury sufficient [to

obtain a preliminary injunction]"). The Court will therefore deny his requests for injunctive relief without prejudice.

### B.    Motion for Preservation of Evidence

In his Motion for Preservation of Evidence, Plaintiff asks the Court to order Defendants and ADCRR to preserve security camera footage, body worn camera footage, prison unit logs, and employee roster attendance records. The Court will deny Plaintiff's requests. As discussed, the Court will direct service on Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, Diaz, Benmen, Fulks, and Levine. After one or more Defendants have been served, the Court will issue a scheduling order that sets forth deadlines for discovery. Until then, any motions for discovery are premature and will be denied.

## VI.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General

TERMPSREF

- 22 -

Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

If Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $35.49.

(3)    Plaintiff's Motions (Docs. 6, 7, and 8) are **denied without prejudice**.

(4)    Counts Three, Seven, Eleven, and Twelve are **dismissed** without prejudice.

(5)    Defendants NaphCare, Thornell, Rogers, and John Does 7-10 are **dismissed** without prejudice.

(6)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

TERMPSREF

(7)    Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, and McCormick must answer Count One.  Defendants Diaz, Simmons, Ortega, Meyers, Sanchez, Rheem, and McCormick must answer Count Two.  Defendants Benmen and Fulks must answer Counts Four and Eight.  Defendant Simmons must answer Count Five. Defendants Simmons, Ortega, Bachman, and Diaz must answer Count Six.  Defendants Simmons and Ortega must answer Count Nine.  Defendant Levine must answer Count Ten.

(8)    The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, Diaz, Benmen, Fulks, and Levine.

(9)    Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(10)    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(11)    The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(12)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

---

[3] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

TERMPSREF

- 24 -

(13)    A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(14)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(15)    Defendants Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, McCormick, Diaz, Benmen, Fulks, and Levine must answer the relevant portions of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(16)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

TERMPSREF

does not identify the specific Defendant by name on whose behalf it is filed.

(17)   Within **120 days** from the filing date of this Order, Plaintiff must file a "Notice of Substitution," substituting the John Doe Defendants' actual names.  The Court may dismiss the John Doe Defendants if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

(18)   This matter is referred to Magistrate Judge Alison S. Bachus pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 14th day of April, 2026.

James A. Teilborg
Senior United States District Judge

TERMPSREF