MGD

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

John Anthony Cole,

Plaintiff,

v.

F. Ortega, et al.,

Defendants.

No. CV-26-00973-PHX-JAT (ASB)

**ORDER**

Plaintiff John Anthony Cole, who is currently confined in the Arizona State Prison Complex (ASPC)-Lewis, Rast Unit, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983.  Before the Court are Plaintiff's Motion for Temporary Order of Restraint, Temporary Order of Protection, and/or Permanent Injunction (Doc. 16); Plaintiff's Rule 65 Motion for Injunction and Restraining Order (Ex Parte) (Doc. 34); and Plaintiff's Motion for Temporary (Emergency) Restraining Order (TRO), Rule 65 (Ex Parte) (Doc. 49).[1]

**I.     Background**

On screening Plaintiff's 12-Count Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment excessive force claim in Count One against Defendants Correctional Officers (COs) Simmons, Ortega, Sanchez, Meyers, Rheem, Bachman, and McCormick; an Eighth Amendment excessive force claim in Count Two against Defendants COs Diaz, Simmons, Ortega, Meyers, Sanchez, Rheem, and

---

[1] Although Plaintiff titles his Motions as seeking temporary restraining orders and/or injunctive relief, the Court construes these Motions as Motions for Injunctive Relief.

McCormick;[2] Eighth Amendment denial-of-medical care claims in Counts Four and Eight against Defendants Sergeant Benmen and Healthcare Administrator Lauren Fulks; a First Amendment retaliation claim in Count Five against Defendant Simmons; an equal protection claim in Count Six against Defendants COs Simmons, Ortega, Bachman, and Diaz; a First Amendment retaliation claim in Count Nine against Defendants COs Simmons and Ortega; and an Eighth Amendment failure-to-intervene claim in Count Ten against Defendant CO Levine.  (Doc. 9.)  The Court dismissed the remaining claims and Defendants.  (*Id.*)

Plaintiff's claims relate to two use-of-force incidents that occurred on February 22 and 28, 2025.  Plaintiff seeks declaratory relief and damages in excess of $4 million.

## II.    Injunctive Relief Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").  Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citation omitted).

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

[2] The Court also determined that Plaintiff stated claims in Counts One and Two against Defendants John Does 1-6 and permitted Plaintiff 120 days to discover the actual names of these Defendants and file a notice of substitution.

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).  Further, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm.  18 U.S.C. § 3626(a)(2); *see Gilmore v. Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III.   Motions for Injunctive Relief[3]

In his Motions, Plaintiff asserts that on May 8 and 9, 2026, his rights were violated by multiple Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) employees.  (Doc. 16 at 2.)  Plaintiff states that on May 8, 2026, CO II Levine denied Plaintiff his noon meal, and Plaintiff blocked his cell windows (apparently in protest), which led to a visit at 2:45 p.m. by Psychologist Garbinski.  (Doc. 34 at 12.)  Grabinski later noted in Plaintiff's medical file that Plaintiff did not need any services or medication, and Plaintiff only wanted his food and to be left alone.  (*Id*. at 12-13.)  Around midnight that night, when Plaintiff was sleeping, ADCRR Security Supervisor Lieutenant Verdugo and Captain Osterloh arrived at Plaintiff's cell to either administer antipsychotic medications or to take Plaintiff to a mental health watch pod even though Plaintiff has no confirmed psychiatric/psychotic disorder or diagnosis and those medications had not been prescribed for him.  (*Id*. at 7.)  Plaintiff asserts that he barricaded his cell and "fought for his life" after being repeatedly sprayed with pepper spray.  (*Id*.)  When Plaintiff was subdued, he was placed in handcuffs, shackled and strapped to a metal restraint chair for over 2 hours.  (*Id*. at 7-8.)  Although Plaintiff was not combative or resistant, and there was no medical examination, diagnosis, or even a check of his vital signs, he was forcefully

---

[3] The Motions at Docs. 16 and 34 relate to the same event and seek nearly identical relief.  Therefore, the Court will combine the facts and discussion of the two Motions.  The Court will also add related details that Plaintiff provides in Doc. 49 as they provide more context.

administered 3 intravenous shots. (*Id*. at 8.)  The injections were a three-dose cocktail of Haldol, Lorazepam and Benadryl.[4]  (*Id*. at 7.)  After the injections, Plaintiff was not provided with any aftercare or follow up even though he suffered multiple broken bones in his ribs and pinky finger and he broke out with a skin rash and hives.  (*Id*.)  Plaintiff fears for his life, health, safety and security as a vulnerable and defenseless ward of the state. (*Id.*; Doc. 16 at 2.)

On May 26, 2026, Plaintiff was again injected with psychotropic medications (Haldol, Ativan, and Benadryl) while in handcuffs and leg shackles and in a metal restraint chair after first being repeatedly sprayed with pepper spray.  (Doc. 34 at 8-9.)  Plaintiff asserts these injections were in retaliation for spitting in the face of an abusive sergeant who made racially insensitive comments while Plaintiff was handcuffed behind his back. (*Id*. at 9.)  Prior to the incident with the sergeant, Plaintiff had been left outside in a rec cage and then a shower for a total of six hours, had not received lunch, and was "hangry" but not psychotic.  (Doc. 49 at 5.)  Before he was injected, psychiatrist/psychologist Munoz told Plaintiff, "Not bad for a boarder [sic] jumper.  I'm ordering you injections.  My position is better than yours."  (Doc. 34 at 11.)  Plaintiff told Munoz he was sound, aware, noncombative, compliant and was being punished for making insults; that he had a right to refuse treatment; that he was Cherokee Indian, Jewish and not on any psych meds or mental health watch; and he pleaded for NaphCare personnel to look at the evidence of the allergic reaction he had the last time he was given injections.  (*Id*.)  RN Holland refused to do the research.  (*Id*.)  Plaintiff has not had follow-up medical care since the incident, and he has not gotten any responses from supervisors about what medications were administered.  (*Id.* at 9.)  On June 2, 2026, Plaintiff filed a grievance about this incident, but the response did not address the forced administration of psychotropic medications.  (Doc. 49 at 6.)

In his third Motion for injunctive relief, Plaintiff asserts that on June 26, 2026, he

---

[4] Plaintiff asserts that there was no qualified mental health professional onsite at that time to make a visible assessment, and he was told that a NaphCare "Telehealth/Telepsych" ordered the three-drug injections for Plaintiff based on third party reporting by ADCRR personnel who are not qualified mental health professionals.  (Doc. 34 at 9.)

was placed on a mental health watch by psychology counselor DeRose for statements Plaintiff made concerning CO II Demetrius Diaz, a Defendant in this action. (Doc. 49 at 5.) On mental health watch, Plaintiff was stripped naked; issued a nonfunctional suicide smock, two suicide half blankets, and four slices of bread and an apple for a meal; Plaintiff had no running water for 30 hours. (*Id*. at 6.)

On June 27, 2026, a NaphCare mental health associate told Plaintiff he had been diagnosed with schizophrenia, bipolar disorder, current episode manic severe with psychotic features. (*Id*. at 5.) On June 28, 2026, NaphCare psychiatric nurse practitioner Munoz told Plaintiff he would be force administered psychotropic medications due to his bipolar diagnosis; the medications are Divalproex Sodium twice daily for 30 days and Risperidone twice daily for 30 days.[5] (*Id*.) On June 29, 2026, Counselor DeRosa[6] told Plaintiff his videos and online documentaries were "scum," and she would ensure justice was done for those "good people."[7] (*Id.*) DeRosa confirmed that her agenda was to lobotomize Plaintiff. (*Id*.) On June 30, DeRosa told Plaintiff she would not allow Plaintiff to ever be removed from mental health watch because "It's my obligated duty to society to kill this monster." (*Id*. at 6-7.)

In his first Motion, Plaintiff seeks an order requiring that he be transferred immediately to the Arkansas Department of Corrections, an immediate transfer from Browning SMU-2, and immediate cessation of the administration of any forced medication. (Doc. 16 at 3.) Plaintiff states that he seeks injunctive relief against ADCRR, ASPC-

---

[5] Plaintiff states this is the same Munoz he encountered on May 26, 2026. (Doc. 49 at 5.)

[6] It is not clear if there were two counselors with similar names or if Plaintiff has used two different spellings for the same person (DeRose and DeRosa), and the Court will simply use the spellings as provided by Plaintiff.

[7] Plaintiff asserts that on June 4, 2026, ADCRR became aware of a viral video of Plaintiff being beaten by Sebastian County, Arkansas, sheriff deputies, and Plaintiff has at least 8 documentaries that have over 1 million internet views. (Doc. 49 at 7.) Plaintiff states that ADCRR officers and NaphCare employees comment to Plaintiff about the videos. (*Id*.)

Eyman, Browning SMU 2 and its administration or correctional staff, and NaphCare Medical.[8] (*Id*. at 1.)  In the second Motion, Plaintiff seeks an order against ADCRR and NaphCare prohibiting the involuntary administration of antipsychotropic [sic] medications in the absence of a prescription or a validated serious mental illness or Plaintiff's consent. (Doc. 34 at 1.)  In the third Motion, Plaintiff requests a hearing or for the Court to grant his requested relief without letting ADCRR see the filing because Plaintiff fears for his life and retaliation that could ensue.  (*Id*. at 10.)

## IV.    Discussion

The Court will deny these Motions without prejudice because they are unrelated to the claims and allegations in the Complaint.  Plaintiff's Complaint relates to two use-of-force events at ASPC-Eyman, Browning SMU-2 on February 22 and February 28, 2025, and the alleged denial of medical care for his injuries suffered in those events.  The events at issue in Plaintiff's current Motions for injunctive relief relate to the alleged involuntary injection of psychotropic medications 15 months later as well as mental health diagnoses Plaintiff claims are unwarranted and retaliatory.  Moreover, the relief sought in the current motions, and the basis for seeking such relief, differ significantly from that sought in the Complaint.  Thus, the Court lacks jurisdiction over claims for injunctive relief that are not related to the claims pleaded in the operative complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction"); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint); *see also Prince v. Schriro*, CV-08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (unless a claim concerns access to the courts, the Plaintiff must show a nexus between the relief

---

[8] NaphCare was dismissed as a Defendant without prejudice upon screening because Plaintiff did not allege that any of the conduct described in the Complaint was the result of a specific policy or custom of Defendant NaphCare.  (Doc. 9.)

sought and the claims in the lawsuit.); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (An injunction should not issue if it " is not of the same character, and deals with a matter lying wholly outside the issues in the suit.").

In addition, none of the individuals or entities against whom Plaintiff seeks injunctive relief are currently parties to this action, and Plaintiff has not shown that these individuals or entities are acting in concert with a current Defendant.  A court may issue an injunction against a non-party only where the non-party acts in active concert or participation with an enjoined party.  Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

Accordingly, the Court will deny the Motions for injunctive relief without prejudice. If Plaintiff wants to pursue additional claims related to the issues raised in his motions for injunctive relief, Plaintiff may file a motion for leave to file an amended complaint with a proposed amended complaint.[9]

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motions for injunctive relief (Docs. 16, 34, 49), and the Motions are **denied**.

Dated this 15th day of July, 2026.

_____
James A. Teilborg
Senior United States District Judge

---

[9] The Court's scheduling order permits motions to amend the Complaint and to join additional parties by July 21, 2026.  (Doc. 30 at 4.)  If Plaintiff needs additional time, he may file a motion for extension of time to file an amended complaint.